## Deskins v. Dunn.

(Decided March 24, 1914.)

### Appeal from Magoffin Circuit Court.

Fraud—Ratification—Laches.—Where a suit was brought to set aside a deed conveying land upon the ground that fraud

was practiced by the purchaser, the seller will not be granted relief when it appears that he ratified the sale by the acceptance of the purchase money long after he had an opportunity to discover the truth or falsity of the alleged representations that induced him to make the sale.

BYRD, NICKELL & HOWARD for appellant.

McGUIRE & McGUIRE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On June 15, 1905, the appellant, Deskins, who was then about 24 years old, executed a title bond to the appellee, Dunn, agreeing to convey to him a tract of land described therein, and on June 17th, pursuant to this title bond, Deskins and his wife executed and delivered to Dunn a deed for the land. The consideration to be paid was $750; $25 paid in cash; $225 to be paid Aug. 1, 1905; $250 to be paid Jan. 1, 1906, and $250 to be paid Jan. 1, 1907, notes being executed for the deferred payments. Upon the execution of this deed Dunn took possession of the land conveyed and was in possession when this suit was brought in 1910 to cancel the deed.

The grounds upon which Deskins sought to cancel the deed were, in substance, these: He averred that Dunn, who was a neighbor and friend of his, represented to him on June 15, 1905, that an indictment had been found against him in the Magoffin circuit court for a felony, and that if he did not leave the county and State he would be immediately arrested, and upon his trial would be convicted of the offense charged and sent to the penitentiary, and further represented to him that Sam Risner and Leander Risner, lawless characters who lived in that community and who had been indicted and convicted of the murder of Deskins' father, were threatening to and would kill him if he did not leave; that these representations and each of them were false and were made for the purpose of inducing him to sell his land to Dunn at greatly less than it was worth. He averred that influenced by these false representations, and relying upon their truth, he was induced to and did sell his land to Dunn for $750, when it was worth at least $3,000 and was induced to and did leave the State. He further averred that only $500 of the consideration had been paid, and that the use of the land, which had been in the possession of Dunn during this time, was reasonably

worth as much as the purchase money which Dunn had paid.

The answer was a traverse of the petition.

After this numerous depositions were taken by both parties, and when the case came on for hearing the circuit judge dismissed the petition and Deskins appeals.

The evidence offered by Deskins, including his own testimony, tended to support the charges made in the petition, that the land he sold to Dunn for $750 was worth about $3,000, and that he was induced to sell and convey it by reason of the false and fraudulent representations made to him by Dunn and on which he relied, and that Dunn had only paid him of the purchase money $500.

On the other hand, the testimony for Dunn tended to show that he did not want to buy the land and was induced to purchase it at the earnest solicitations of Deskins; that all of the purchase price had been paid, and that the land at the time he bought it was not worth exceeding $800 or $1,000.

In addition to the real issues made by the pleadings, a great many totally irrelevant issues were injected into the case by both parties, and much of the voluminous evidence taken relates to these irrelevant issues. The essential facts are rather few and simple, but the evidenc relating to them is directly conflicting.

It appears that Deskins had committed some offenses against the law shortly before he sold the land to Dunn, and it is fair to assume from the evidence that he was apprehending that he might be prosecuted, and it also appears that he was somewhat alarmed by the fear that harm would be done him by some persons in the neighborhood. It is, however, further shown that the grand jury, in session at the time, did not indict him for a felony, and he was so advised before or about the time the deed was made. At any rate, very soon after the deed was made he left Magoffin County and went to the State of West Virginia, where he remained until some time in October, when he returned to Magoffin County and received from Dunn $350 of the purchase money, and signed and acknowledged before a deputy clerk an instrument of writing showing the receipt of this amount, and again returned to West Virginia.

After this he remained in West Virginia for a while and again returned to Magoffin County and purchased from Dunn a stock of merchandise, the price of which

was credited on Dunn's note; and after this he conducted a small mercantile business in Magoffin County for several months.

There is in the record a receipt signed by Dunn on November 15, 1905, for $140 which recites that this sum was to be credited on Dunn's note due Jan. 1, 1906. On the back of the note for $250 due Jan. 1, 1906, there is an endorsement signed by Deskins showing that the note was paid in full in November, 1908. It is further shown by the record that in February, 1910, Deskins, in a suit against him by some merchants from whom he had bought goods while he was in that business, testified that:

"I am one of the defendants in this action, and at the time of the filing of the said suit on the 12th day of November, 1906, I was owing the plaintiff, Abner Barns & Co., $100, and I still owe them the $100, with the interest from the year 1906. At the time of the filing of this suit the defendant, John M. Dunn, was owing me something over $100, and I had his note for that amount. I think the amount was $106, but I am not positive, and he has since that time settled and paid off to me the said note and I delivered the said note to him. He settled and paid off the said note some time in the year 1908; my best recollection is that it was in October, 1908." This deposition was given a short while before he filed this suit.

The receipts in evidence show that Deskins received $25 in cash; $350 in October, 1905; that some time in November, 1905, the note for $250, due Jan. 1, 1906, was paid, and sometime after this, in another trade between the parties, the last note was paid and all of the notes, at the time of this suit, were in the possession of Dunn.

It is very true that Deskins undertakes to explain away the effect of his evidence in the suit of Abner Barns & Co., and to show that all of the purchase money had not been paid, but the weight of the evidence is against him.

As before stated, the evidence is conflicting as to whether Deskins persuaded Dunn to buy the land or Dunn influenced Deskins to sell it; but however this may be, if we should asume that Dunn made the false representations charged, and these representations induced Deskins to sell the land and leave the county, he knew within a very short time thereafter that the representations were false; but, notwithstanding this knowledge,

and after being fully advised as to all the facts, he ratified the sale by accepting the balance of the purchase money from Dunn and did not bring this suit to cancel the sale until five years after it had been made. This long delay on his part in seeking relief from the alleged fraud practiced upon him, taken in connection with the other facts and circumstances shown in the case, clearly establish, as we think, that there is no merit in this suit, and the judgment of the lower court, dismissing the petition, is affirmed.